UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| V. | ) | No. 2:10-CR-113 |
| | ) | |
| JAMES CODY | ) | |

### REPORT AND RECOMMENDATION

Defendant is charged with engaging in the business of dealing in firearms without a license in violation of 18 U.S.C. § § 922(a)(1)(A) and 924(a)(1)(B). At least part of the United States' proof against him will be evidence of over 100 handguns, rifles, and shotguns seized from his residence on April 9, 2009, as well as a statement he made to Corporal Hinkle of the Morristown, Tennessee Police Department on that same date.

Defendant has filed a motion to suppress evidence of the firearms, and his statement. (Doc. 7). This motion has been referred to the United States Magistrate Judge under the standing orders of this Court and pursuant to 28 U.S.C. § 636(b). An evidentiary hearing was held on December 16, 2010.

The issues framed by the defendant's motion to suppress are a bit out of the ordinary. The facts are essentially undisputed. The only witnesses who testified at the hearing were Gary Bean, Chris Blair, and Kenneth Hinkle, all officers of the Morristown Police Department, and Amber Wilson, a Tennessee Probation Officer.

Defendant and his ex-wife, Cherry Cody, resided at 3950 San Francisco Drive in Morristown. Cherry Cody was suspected of counterfeiting designer handbags (purses), and

jewelry. Officer Bean procured a state warrant to search the premises at 3950 San Francisco Drive for any evidence related to the manufacture and possession of counterfeit goods.[1]

Lieutenant Blair was the senior officer who was to supervise the execution of the warrant. On April 8, 2009, as he always does as a routine precautionary measure before executing a search warrant, he attempted to ascertain through public real estate records in Hamblen County who resided at 3950 San Francisco Drive; those records revealed that James Cody and Cherry Cody resided at that address.

Blair then submitted those names to the "Tennessee Justice Portal," a database created and maintained by the Tennessee Bureau of Investigation. That database contains information concerning Tennessee residents, including relatively benign information such as driver's license information and other identifying information. The database also contains a person's criminal history, if he has one.

When Blair typed in defendant's name, the database indicated that the defendant was a convicted felon (drug offenses), and currently on probation. Blair shared this information with his officers who were to execute the search warrant the following day.

A total of six officers, including Bean and Blair, executed the warrant on April 9, 2009. The house was literally piled high with counterfeit purses and jewelry; Bean testified that he had to pick his way along pathways throughout the house among the stacks and piles of purses.

---

[1] No issue is raised regarding the validity of that warrant.

In what otherwise would have been the living area of the house were four gun safes, each containing a number of rifles and shotguns. In a storage shed at the rear of the house were guns, in cases, stacked in piles.

Having information from the Tennessee Justice Portal that defendant was a convicted felon, Lt. Blair contacted Corporal Hinkle, the Project Safe Neighborhoods Officer of the Morristown Police Department. Shortly thereafter, Hinkle arrived at the house and, after looking at the sheer number of guns and the manner in which they were stored, concluded that defendant was likely buying and selling guns, and that he was doing so as a convicted felon.

Hinkle read a *Miranda* warning to defendant, and asked defendant if he understood it, and if he had any questions. Defendant acknowledged that he understood. Defendant then signed the waiver of his right to remain silent. Hinkle also signed the form, and defendant's brother, Larry Cody, also signed as a witness.[2]

Hinkle then interviewed defendant with reference to the guns. In that statement, defendant said that he had "several felony convictions in 2007," and that he had been on probation. He also acknowledged that all the guns in the storage building and in the gun safes belonged to him, except for a few that belonged to his ex-wife. He also acknowledged that he bought and sold guns "to put food on the table."

Hinkle wrote out defendant's statement and then read it back to defendant for him to confirm its accuracy. Defendant then signed the statement, and it too was witnessed by

---

[2] Ex. 4.

defendant's brother, Larry Cody.[3]

Defendant argues that he was *not* a convicted felon, as a result of which the officers had no right to seize his firearms. It is at this point that this motion to suppress takes an unusual turn.

In January 2007, defendant was charged in the Criminal Court for Grainger County, Tennessee, a part of the Fourth Judicial District, with the sale of morphine; the sale of Dihydrocodeinone; and with the sale of Diazepam. Apparently he was able to persuade the District Attorney General for the Fourth Judicial District that he was a suitable candidate for "judicial diversion" under Tenn. Code Ann. § 40-35-313. This statute allows a "qualified defendant" to *plead guilty* to the offenses with which he is charged, and be sentenced to a term of probation equal to the maximum term of incarceration the person otherwise could have received. If the defendant successfully completes his term of probation with no violations, all proceeding against him are dismissed and, upon his application, all records regarding the offense expunged.

Defendant pleaded guilty to the charges of the sale of morphine and sale of Dihydrocodeinone, both felonies. Two other charges, regarding a sale of Diazepam and another Dihydrocodeinone offense, were both reduced to "casual exchanges," to which he also pleaded guilty.

Judgments so reflecting were signed by Circuit Judge Slone of the Fourth Judicial

---

[3]Ex. 5.

District, and were filed.

As required by the statute, defendant was also subject to a "Probation Order," Exhibit 2, which he and his Supervising Probation Officer, Amber Wilson, signed.[4] That order prohibited defendant from possessing firearms.

Defendant was within his probationary term when the search warrants were executed on April 9, 2009. Thus, *as of that date*, defendant undeniably was a "convicted felon" since his conviction had not yet been expunged. Defendant argues, however, that his conviction was expunged shortly thereafter, and that expungement should relate back to April 9, 2009, when the search warrant was executed, as a result of which the officers had no right to seize his firearms. Defendant's argument fails for any number of reasons.

If a law enforcement officer is lawfully located in a place where an object may be plainly seen, and the incriminating character of that object is "immediately apparent," he may seize that object even though the object is outside the scope of the search warrant he then is executing. *Horton v. California*, 496 U.S. 128 (1990). On April 9, 2009, the police officers had information that defendant was on probation for felony convictions involving drugs. This belief was engendered by information in the Tennessee Justice Portal, which, as already

---

[4] Interestingly, Judge Slone did not sign this Probation Order. Probation Officer Wilson testified that this is standard operating procedure for the judges of the Fourth Judicial District. She testified that if the Probation Order is to be the "standard" order, which this order was, the judges simply do not bother to sign it. Why they don't take the time to scribble their signature is not understood, but nevertheless it is clear that defendant was on probation. The Judgment Of Conviction confirmed the sentence of probation, and the transcript of the plea colloquy between Judge Slone and the defendant also unambiguously refers to a three year sentence of probation. (Ex. 6).

noted, is a database maintained by the Tennessee Bureau of Investigation, and which is relied upon daily by law enforcement officers across this state. There was no hint or suggestion that this database is of dubious reliability, or that these officers should not be allowed to rely upon it.[5] In fact, the information in the Tennessee Justice Portal database, as of April 9, 2009, was absolutely correct. At that time, there were judgments of convictions filed in Grainger County, Tennessee, and defendant was serving a three-year probationary sentence. The fact that the convictions were later expunged cannot alter the facts *as they existed on April 9, 2009.*

Second, the issue is one of probable cause only. These officers had information supplied by a trusted database that defendant was a convicted felon. They were not required to investigate the antecedents of that information, and there was nothing to suggest that they should have done so. Indeed, what would have been the point? There was nothing about the information regarding defendant to differentiate him from the hundreds and thousands of other individuals in that database. Should officers be required to independently verify (somehow) information in the Tennessee Justice Portal regarding a defendant's criminal history? Moreover, had they investigated, they would have found out that defendant pled guilty to the sale of morphine and sale of Dihydrocodeinone, and was a candidate for judicial diversion. A "candidate" for judicial diversion or not, the fact remains that he was a convicted felon as of April 9, 2009. Regardless, the court reiterates that the issue is one of

---

[5]For this court to hold that the officers could not rely upon information in the Tennessee Justice Portal would be tantamount to holding that federal law enforcement agents cannot rely upon information in NCIC and, for that matter, neither can this court.

*probable cause* to believe that defendant was a felon; an officer is not required to reduce his probable cause to absolute certainty before he may act upon it. *United States v. Silvey*, 2010 WL 3398837 (6th Cir. 2010).

Third, the expungement is irrelevant. If defendant was charged in this court with being a convicted felon in possession of firearms, then this case would be subject to dismissal; *see, United States v. Mynatt*, 349 F.Supp.2d 1056 (E.D.Tenn. 2004). *Mynatt* only stands for the proposition that an expunged conviction cannot constitute the underlying or predicate conviction to support a charge of being a convicted felon in possession of a firearm. Defendant herein is charged with dealing firearms without a federal license; his prior conviction, expunged or not, is irrelevant to that offense.

The officers were lawfully in defendant's house to execute a warrant to search for counterfeit goods. While executing that warrant, they saw in plain view more than 100 firearms. They had at the every least probable cause to believe that defendant was a convicted felon. As already noted, this court is of the opinion that defendant in fact was a convicted felon on that date, and clearly in violation of the terms of his probation, but probable cause is sufficient in any event.[6] Although the guns were outside the scope of the warrant, they were in plain view, and those officers had probable cause to believe that

---

[6]Defendant established that as a result of the discovery of these firearms, defendant was charged in state court with a violation of his conditions of probation, and that the judge dismissed that charge. That ruling is utterly irrelevant to any issue before this court.

defendant was a convicted felon and on probation.[7] As a result, they had probable cause to believe that those guns were evidence of criminal activity, and they had the right to seize them at that point. *See, e.g., United States v. Beal*, 810 F.2d 574 (6th Cir. 1987).

The firearms, however, were *not* seized at that point, which renders academic most of the foregoing discussion. Officer Beal called Corporal Hinkle who, after he arrived at the scene, interviewed defendant with regard to the guns. In that interview, defendant told Hinkle that he had been convicted of several felonies and he was on probation. Again, this either added to the probable cause equation, or established the absolute truth of his convicted status; it matters not which.

At this point, it is appropriate to discuss defendant's argument that he is illiterate, and that he did not intelligently waive his right to remain silent. He points out that his statement to Corporal Hinkle contains "numerous" errors.

With respect to his assertion that he did not knowingly waive his *Miranda* rights, the proof clearly shows to the contrary, as already discussed. The "error" in his statement of which he complains is his acknowledgment that he had been convicted of "several" felonies. Again, that is not an error; rather, he was quite correct. And even if not correct – in the sense that the subsequent expungement somehow retroactively altered facts as they originally

---

[7]"Plain view," in the context of this case, does not require that the guns be sitting in the middle of the kitchen table. If the officers looked in places where the contraband for which they were searching might be found, and if they discovered the guns in the process, the guns were in "plain view." Counterfeit purses could have been stored in the gun safes, and in the shed.

8

existed on April 9, 2009, -- the dispositive issue is still one of probable cause.[8]

Defendant's statement to Hinkle confirmed that he was a convicted felon and that he was dealing in the sale of firearms without a license. Only after he made this statement were the guns seized. Even though his convictions were later expunged, as a result of which he was not a "convicted felon," the fact remained that he had admitted to selling guns without a license in violation of federal law. The guns were properly seized as evidence of that offense.

It is respectfully recommended that defendant's motion to suppress, (Doc. 7), be denied.[9]

Respectfully submitted,

    s/ Dennis H. Inman
United States Magistrate Judge

---

[8] Actually, there was no direct evidence of defendant's illiteracy. But even if he is illiterate, there was no evidence that he is ignorant or of weak mind.

[9] Any objections to this report and recommendation must be filed within fourteen (l4) days of its service or further appeal will be waived. 28 U.S.C. 636(b)(1).